## (December 4, 1969)

■ ETHYL CAPUANO, Respondent, v. HERBERT M. JACOBS et al., Defendants, and NEW YORK POLYCLINIC HOSPITAL, Appellant.

APPEAL from a judgment of the Supreme Court in favor of plaintiff, entered October 28, 1968 in New York County upon a verdict rendered at a Trial Term, in a malpractice action.

Memorandum by the court. Judgment affirmed, with $50 costs and disbursements to the plaintiff-respondent. Fair questions of fact were presented to the jury by the evidence adduced by both sides as to whether the action was commenced within the two-year Statute of Limitations under the " continuous treatment " theory (*Borgia* v. *City of New York*, 12 N Y 2d 151) and whether the defendant's conduct, if it was found to be malpractice, was the proximate cause of the plaintiff's injuries. The verdict of the jury, in favor of the plaintiff, is supported by the evidence and we can see no legal reason for interfering with same.

EAGER, J. (dissenting). The plaintiff failed to prove a case against the defendant hospital. There was a failure to present any evidence sufficient to support the finding of negligence on the part of the hospital resulting in plaintiff's alleged injuries and, furthermore, it appears that, as a matter of law, her alleged cause of action is barred by the applicable Statute of Limitations.

744

The action, commenced in April, 1964, was brought to recover for the alleged malpractice of the defendant hospital in the failure of its staff radiologist in April, 1961, to report a shadow appearing on an X-ray picture that was allegedly indicative of the presence of a stone in plaintiff's right kidney. Although there was eventually a diagnosis of the existence of a stone in the kidney and the same was removed by an operation, the recovery of the plaintiff in this action includes damages allegedly caused by the subsequent removal of the kidney and an abscess infection thereafter occurring.

The plaintiff was admitted to the defendant hospital in April, 1961, at the instance of her attending physician, on a diagnosis of a "sebaceous cyst". According to her testimony, she complained of "a small cut on the back of my neck which didn't heal properly". A laminectomy had been performed on her lower spine in 1955, and she also testified that she had "severe pain in my back, in the right flank, and Dr. Jacobs [her attending physician] wanted to take the X-rays". Thereupon, on April 19, 1961, while she was at the hospital, defendant's staff radiologist took X-ray pictures of her back and one of these pictures showed a light shadow or density in the area of the right kidney. On April 21, 1961, her physician performed surgery on the back of her neck. She was discharged on a final diagnosis of "fibro-epithelial polyp of the skin. Postoperative course was uneventful. Discharged to the care of private physician."

Concededly, the shadow shown on the one X ray, incidentally taken at the hospital, was not necessarily indicative of any kidney involvement and the plaintiff's expert admitted that the picture was not sufficient to support a diagnosis of the presence of a kidney stone. In any event, the radiologist confined his report concerning the X-ray pictures to findings respecting the spinal area, including the interstitial spaces of the spine and failed to mention the shadow in the kidney area. It is plaintiff's claim that the hospital is chargeable with negligence in the failure of its radiologist to find and report to plaintiff's physician the presence of the shadow on the X ray with an interpretation that it could represent the existence of a kidney stone.

The duty of the hospital to the plaintiff must be viewed in light of the fact that the plaintiff had placed herself under the care and treatment of an independent physician selected by her. While at the hospital, she remained subject to the supervision and directions of this physician. The taking of the X rays was for the purpose of furnishing information relative to the diagnosis and treatment of plaintiff's neck and back by the attending physician and it was in this connection that the hospital was engaged to and did undertake to take X-ray pictures limited to the area of plaintiff's spine. Certainly, the hospital may not be held liable for the negligence, if any, of the attending physician. (Incidentally, the plaintiff has settled the cause of action for negligence directed against the attending physician.)

Under the circumstances, the hospital fulfilled its responsibilities to plaintiff when its radiologist exercised due care in the taking of the X rays, in the interpretation of the same, and in the reporting of his findings limited to the area properly covered by the X rays. It was not contended that the hospital was directed to or undertook to take X-ray pictures of the plaintiff's kidneys or of that particular area of her body. Bearing in mind the purpose of the particular X rays and that the shadow in the kidney area appearing on one of the pictures could be attributed to many causes other than the existence of a cause requiring medical attention, the radiologist was entitled to consider the shadow of no significance in preparing and reporting his findings, and the hospital may not be held liable for his failure to report the same.

Furthermore, on the basis of the record, it does not satisfactorily appear that the failure of the raidologist to report the presence of the shadow in the kidney area was the proximate cause of the removal many months later of plaintiff's kidney and the complications subsequently arising from an abscess infection resulting in an operation in September, 1967. Assuming that, as was the testimony of plaintiff's experts, a report of the shadow would have led to further studies and to an earlier diagnosis of the existence of a kidney stone, one is left to speculate as to what treatment would then be indicated and as to whether and when an operation to remove the stone would have occurred. Inasmuch as the responsibility for plaintiff's treatment was placed with her attending physician and not with the hospital, the plaintiff may not properly contend that the hospital was charged with a duty to make studies to ascertain whether there was a kidney condition or to proceed with an operation if there had been a diagnosis in April, 1961 of the existence of a stone. Moreover, it is significant that a shadow in the kidney area also appeared in X rays of plaintiff's spine taken in March, 1962, at another hospital (the Montefiore Hospital), and the radiologist there did not report the presence of the shadow. Then, finally, when there was a diagnosis of the existence of a kidney stone, operations were had for the removal of the stone and later for the removal of the kidney itself. The subsequent developments, including the abscess infection in the kidney area and the operation therefor in 1967, were wholly or partly the result of these surgical procedures. Considering the circumstances, in a light most favorable to the plaintiff's cause, the failure of the defendant's radiologist in April, 1961, to report the shadow appearing on the X ray does not furnish a basis for holding the hospital responsible for the remote developments following the removal of the kidney.

Finally, it is clear that, if the defendant hospital is chargeable for a negligent act or omission on the part of its radiologist occurring in April, 1961, a cause of action based thereon is barred by the two-year Statute of Limitations. The "continuous treatment" rule may not be applied to save the alleged cause of action from the statutory bar. Within the meaning of the rule, "' continuous treatment' * * * is treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship" or of a general hospital-patient relationship. (See Borgia v. City of New York, 12 N Y 2d 151, 157.) Certainly, the rule is not applicable where the proof goes no further than to show a new admission after a terminated hospital-patient relationship. (See McQuinn v. St. Lawrence County Lab., 28 A D 2d 1035, mot. for lv. to app. den. 21 N Y 2d 644.)

Here, as aforenoted, the plaintiff was at all times under the care of and treated by an attending physician who had no connection with the hospital. The taking of the particular X rays of the plaintiff's cervical and lumbar spine was a ministerial act and such act, together with the report of its radiologist concerning the X rays, was not undertaken or performed in connection with a course of treatment by the hospital. There is no contention that the hospital at this time undertook to or did treat the plaintiff concerning any kidney condition. Furthermore, on April 23, 1961, according to hospital records, as aforementioned, the plaintiff was "Discharged to the care of private physician"— so, when the plaintiff left the hospital, such professional relationship as had existed between the patient and the hospital was then terminated.

It is true that, after leaving the hospital in April, 1961, the plaintiff continued under the care of her attending physician, but the continuing course of treatment was with this physician and not with the hospital. Although the plaintiff returned to the defendant hospital for 13 days in June, 1961, because

of her alleged back condition and also complaining of urinary retention, when she was again admitted to the defendant hospital in July, 1962, for the operation for removal of the kidney stone, such admission was independently arranged and was certainly not part of a course of treatment related to the taking of the X rays in April, 1961. The July, 1962 admission was clearly not part of a "continuous course of treatment" by the defendant hospital beginning in April, 1961.

I would reverse the judgment for plaintiff and dismiss her complaint.

Capozzoli, Markewich and Nunez, JJ., concur in Memorandum by the Court; Eager, J., dissents in opinion in which Stevens, P. J., concurs.

Judgment affirmed, etc.